UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER FOSTER, ) | CASE NO. 4:25-cv-295 |
| ) | |
| Plaintiff, ) | CHIEF JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| NORTHEAST OHIO CORRECTIONAL ) | |
| CENTER, ) | |
| ) | |
| Defendant. ) | |

Before the Court is the motion to dismiss (Doc. No. 18 (Motion)) filed by defendant Northeast Ohio Correctional Center ("NEOCC"). Plaintiff Christopher Foster ("Foster") opposes the motion (Doc. Nos. 22 (Opposition), 23 (Supplement to Opposition)), and NEOCC filed a reply. (Doc. No. 24 (Reply).) Foster also moved for injunctive relief. (Doc. Nos. 4 ("Rule 65 Court Access Aid Request"), 17 ("Pro Se Priority Rule 65 Motion").) For the reasons discussed herein, NEOCC's motion to dismiss is granted, Foster's motions for injunctive relief are denied, and the case is dismissed.

I.  **BACKGROUND**

Foster is currently incarcerated at NEOCC (Doc. No. 1 (Complaint), at 1),[1] a private prison in Youngstown, Ohio.[2] Foster filed a complaint against NEOCC asserting numerous, often unclear,

---

[1] Page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] NEOCC is owned and operated by CoreCivic. *See* Ohio Department of Rehabilitation and Corrections, Northeast Ohio Correctional Center, https://drc.ohio.gov/about/facilities/northeast-ohio-correctional-center (last visited Aug. 8, 2025) (ODRC website directing visitors to consult CoreCivic about visitation hours at NEOCC); *see also* CoreCivic, Find a Facility, https://www.corecivic.com/facilities (last visited Aug. 8, 2025) (CoreCivic website listing NEOCC as one of its facilities). The Court takes judicial notice of that fact. *See Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) ("[A Court] may take judicial notice of 'a fact that is not subject to reasonable dispute' either

allegations related to disability discrimination and contract breach. (*See generally* Doc. No. 1 (Complaint); Doc. No. 13 (Supplement to Complaint).)

Foster is disabled and uses a wheelchair. (*See* Doc No. 23-1 (Inmate Reasonable Accommodation Request), at 1, *see also* Doc. No. 1, at 7 (Foster discussing his mobility device).) For over a decade, he lived without a cellmate. (*See* Doc. No. 13-4 (Foster's 10/20/24 Grievance), at 1.) Sometime in late 2024, he was assigned a cellmate for the first time. (*See id.*) Foster acknowledges that he only shared his cell between October 2024 and November 2024, and currently occupies a cell alone. (*See* Doc. No. 13, at 2.) But during that roughly two-month period of cohabitation, the other inmate's size, combined with Foster's mobility device, impeded Foster's ability to move around the cell and access the shared toilet. (Doc. No. 1, at 7.) One morning, the cellmate, who "did not want a cellmate with disabilities[,]" attacked Foster, breaking his nose. (*Id.*)

Foster alleges he was "sent to the hole" for "refusing to lock down" with his cellmate. (*Id.* at 8.) While in the hole, NEOCC personnel came to meet with him about a complaint he filed about the cellmate. (*Id.* at 9.) During that meeting, a corrections officer "barged in" to threaten Foster with a transfer to another facility, allegedly in retaliation for the complaint. (*Id.*; *see also id.* at 10.) Among other things related to his disability, Foster asserts that he was denied effective treatment for his neuropathy pain due to NEOCC's no-narcotic policy. (*Id.* at 8.)

Other allegations relate to a $5.4 billion dollar contract that NEOCC made with the "Government using promissory fraud against, Plaintiff, the intended beneficiary of the contract." (*Id.* at 2.) He claims that "the public entity (Ohio)" is using CoreCivic, NEOCC's parent company, to discriminate against him, something Congress "forbade." (*Id.* at 2–3.) He seeks $5.4 billion

---

because such a fact 'is generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))); *see Wilson v. CoreCivic, Inc., et al.*, No. 4:22-cv-1811, 2023 WL 7109719, at *1 (N.D. Ohio Oct. 27, 2023) (noting that plaintiff was a detainee housed at NEOCC, "which is owned and operated by CoreCivic").

dollars in damages for the unfulfilled contract. (*Id.* at 12.) Also in the way of relief, Foster requests $2,222,222,222 in damages and a wide range of equitable remedies including employment as NEOCC's "ADA specialist . . . for lifetime duty, with a one dollar a month salary[,]" the ability to use a car to travel between prison facilities in Ohio, and a permanent security detail of five guards. (*Id.* at 13.) He further seeks single-cell housing, a private nurse and doctor, and the ability to buy his own medication from Ohio-approved vendors, among other things. (*Id.* at 14.)

Foster filed several motions, including a "Rule 65 Court Access Aid Request" (Doc. No. 4), a "Pro Se Priority Rule 65 Motion" (Doc. No. 17), and a motion for "good faith provisions" (Doc. No. 19) which included a request for standby counsel. (*See id*. at 5.) NEOCC filed a motion to stay (Doc. No. 21 (Motion to Stay Case)) all pending motions until the Court resolves the instant motion to dismiss. In its May 23, 2025 order, the Court denied Foster's request for standby counsel and indicated that the Court would address Foster's request for emergency injunctive relief, if necessary, after the motion to dismiss is resolved. (*See* Order [non-document], filed 5/23/2025.) In the same order, the Court partially granted NEOCC's motion to stay the case and partially denied it as moot. (*Id.*)

**II.    STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd*., 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

Although pro se pleadings are construed liberally and held to less stringent standards than formal pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citation omitted), the lenient treatment generally accorded *pro se* plaintiffs "has limits" and *pro se* plaintiffs are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

### III. DISCUSSION

Foster appears to advance two claims against NEOCC. The first arises under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") (Doc. No. 1, at 5–11; *see* Doc. No. 13, at 4), and the second is for breach of contract under state law. (Doc. No. 1, at 2–5; *see* Doc. No. 13, at 2.)

### A. Whether Claims Can Be Sustained Against NEOCC

NEOCC argues that dismissal is warranted under Fed. R. Civ. P. 12(b)(6) because NEOCC is "a non-jural entity that cannot be sued at all," much less for "the monetary, equitable, injunctive and/or prospective relief" Foster seeks. (Doc. No. 18, at 13.) Thus, NEOCC argues, because the defendant in this action is not *sui juris,* Foster has failed to state a claim upon which relief can be granted. (*Id.*) Foster counters that NEOCC can be sued because, by accepting a $5.4 billion contract with the State of Ohio, NEOCC has "agreed to assume the State's duties[.]" (Doc. No. 22, at 2; *see id.* at 3–4 (Foster further explaining why NEOCC may be sued).) The Court agrees with NEOCC.

For an entity like NEOCC that is neither an individual nor a corporation, the "[c]apacity to sue or be sued[,]" and therefore be deemed *sui juris*, is governed "by the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b)(3). To be considered *sui juris* in Ohio, a party must have "full capacity and rights to sue or be sued." *Urb. Necessities 1 Stop Shop, LLC v. City of Cleveland*, No. 1:22-cv-2014, 2023 WL 6383825, at *2 (N.D. Ohio Sept. 29, 2023) (citing *Mollette v. Portsmouth City Council*, 863 N.E.2d 1092, 1094 (Ohio Ct. App. 2006)).

"NEOCC is a non-jural entity that does not have a separate legal existence." *See Dimora. Ne. Ohio Corr. Ctr.*, No. 4:14-cv-1221, 2015 WL 1119768, at *3 (N.D. Ohio Mar. 11, 2015). It is merely a facility owned and operated by CoreCivic. *Torre v. Corr. Corp. of Am.*, No. 4:16-cv-2004, 2016 WL 6893279, at *6 (N.D. Ohio Nov. 23, 2016) (dismissing case against NEOCC because it is not sui juris). Foster does not offer authority supporting his proposition (*see* Doc. No. 22, at 2) that NEOCC's contract with the government transforms it into a jural entity. And courts in this circuit have repeatedly held that NEOCC lacks the capacity to be sued. *See, e.g.*, *Glaser v. Smith,* No. 4:22-cv-1019, 2023 WL 4052470, at *8 n.5 (N.D. Ohio June 16, 2023) ("[T]o the extent

5

[the] amended complaint raises any claim against NEOCC, those claims are dismissed because NEOCC is a non-jural entity that is not subject to suit"); *Picone v. United States Marshal Serv.,* No. 4:15-cv-2033, 2016 WL 5118303, at *3 (N.D. Ohio Sept. 21, 2016) ("There is nothing in the record to suggest that NEOCC has a separate legal existence that can either sue or be sued."). Accordingly, no claim can be sustained against NEOCC, and dismissal is warranted under Fed. R. Civ. P. 12(b)(6). *See Warman v. Mount St. Joseph Univ.*, No. 24-3042, 2025 WL 2017233, at *6–7 (6th Cir. July 18, 2025) (affirming dismissal under Fed. R. Civ. P. 12(b)(6) of all claims against an entity that lacked the capacity to be sued).

But even if NEOCC was *sui juris* (or even if Foster had named a *sui juris* defendant), dismissal would still be warranted because both of Foster's counts are facially implausible. *Iqbal*, 556 U.S. at 678. First, though Foster does not specify which provision of the ADA his disability discrimination claim arises under (*see* Doc. No. 1, at 5–11), none of the ADA's three sections apply to a private prison or to the facts of this case. *See Collazo v. Corr. Corp. of Am.,* No. 4:11-cv-1424, 2011 WL 6012425, at *2–3 (N.D. Ohio Nov. 30, 2011) (describing the three titles of the ADA and dismissing ADA claims against former private operator of NEOCC). Foster is not raising ADA claims in the context of employment (Title I). *Id.* at *3. And private prisons are "not subject to Title II[,]" which generally applies only to public-owned services.[3] *See Anderson v. S. Cent. Corr. Facility,* No. 1:14-21, 2015 WL 5794524, at *4 (M.D. Tenn. Oct. 1, 2015), *report and recommendation adopted*, 2016 WL 54921 (M.D. Tenn. Jan. 5, 2016). "Finally, private prisons are not among the private entities required to provide public accommodation under Title III."

---

[3] Although the Sixth Circuit has not directly considered whether a private prison contractor can be a "public entity" under Title II of the ADA, other circuits have held that a private prison contractor is not a "public entity" under the ADA. *See, e.g., Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013) (holding that the ADA does not apply to private prisons); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (same); *Green v. City of N.Y.*, 465 F.3d 65, 78–79 (2d Cir. 2006) (holding that a private hospital contracting with the City is not a public entity).

*Tester v. Hurm*, No. 09-318, 2011 WL 6056407, at *3 (E.D. Ky. Dec. 6, 2011) (citations omitted); *see also Collazo*, 2011 WL 6012425, at *3–4 (discussing the categories of facilities covered by Title III and concluding "[a] jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions").

Similarly, the RA, which prohibits "any program or activity receiving Federal financial assistance" from discriminating on the basis of disability, does not apply to NEOCC. 29 U.S.C. § 794(a). Though Foster alleges that NEOCC contracted with the State of Ohio, he does not allege that NEOCC receives any federal funding, nor that any such funding qualifies as financial assistance. *See Ndiaye v. United States*, No. 4:20-cv-1703, 2021 WL 4441607, at *4–5 (N.D. Ohio Sept. 28, 2021) (finding that the RA does not apply to CoreCivic because its contract with the federal government to provide detention services does not qualify as a subsidy, and dismissing RA claims).

Foster's breach of contract claim (Doc. No. 1, at 2–5; *see* Doc. No. 13, at 2) is also facially implausible. Under Ohio law, a breach of contract claim can be asserted by either a party to the contract or an intended third-party beneficiary. *Thornton v. Windsor House*, 566 N.E.2d 1220, 1223 (Ohio 1991). Though Foster alleges he is an intended beneficiary of a $5.4 billion contract that NEOCC made "with the Government using promissory fraud" (Doc. No. 1, at 2), at this stage he must at least plausibly allege "that the contract was intended to directly benefit [a] third party." *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011). Foster's status as an inmate at NEOCC is not evidence that he was an intended beneficiary of the contract to which he refers. *See Adams v. CoreCivic of Tenn.*, L.L.C., No. 3:23-cv-823, 2024 WL 253616, at *6 (M.D. Tenn. Jan. 23, 2024) (collecting cases and dismissing breach of contract claim where prisoner plaintiff failed to state a plausible claim that he was a third-party beneficiary to a contract between CoreCivic and

the county); *see also Claritt v. Correct Care Sols.*, No. 3:20-544, 2022 WL 282911, at *4 (M.D. Pa. Jan. 31, 2022) (dismissing inmate's breach of contract claim because of insufficient factual allegations to show "that there was an express contractual intent to make him a third-party beneficiary of the relevant contract"). Thus, even if NEOCC was subject to suit, dismissal of both Foster's claims would be warranted under Fed. R. Civ. P. 12(b)(6).

    **B.**    **Foster's Motions for Injunctive Relief**

Also pending before the Court are Foster's two motions for injunctive relief. (Doc. Nos. 4, 17.) Because the Court has dismissed the complaint, both motions are properly denied as moot. *See Edelstein v. Flottman*, No. 24-3156, 2025 WL 609487, at *3 (6th Cir. Jan. 10, 2025) (affirming denial of TRO motions because dismissal of the complaint rendered the motions moot); *see also Johnson v. Shultz,* No. 22-cr-11273, 2023 WL 4477149, at *3 (E.D. Mich. July 11, 2023) ("Having dismissed Plaintiff's complaint, the Court denies Plaintiff's motion for TRO and motion for preliminary injunction as moot.").

**IV.**    **CONCLUSION**

For the reasons set forth herein, NEOCC's motion for summary judgment (Doc. No. 18) is granted, Foster's motions for injunctive relief (Doc. Nos. 4, 17) are denied, and the case is dismissed with prejudice.

    **IT IS SO ORDERED**.

Dated: August 8, 2025

                                                     **HONORABLE SARA LIOI**
                                                     **CHIEF JUDGE**
                                                     **UNITED STATES DISTRICT COURT**