UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FOSTER, | ) | CASE NO. 4:25-cv-295 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NORTHEAST OHIO CORRECTIONAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the motion of plaintiff Christopher Foster ("Foster") to reopen pursuant to Rule 60 of the Federal Rules of Civil Procedure. (Doc. No. 27 (Motion).) In support of the motion, Foster filed an initial memorandum (*id.* at 2–6[1]), a "supplemental justice memorandum" (Doc. No. 28), a reply (Doc. No. 32), and a "supplemental reply." (Doc. No. 33.[2]) Defendant, Northeast Ohio Correctional Center ("NEOCC"), opposes the motion. (Doc. No. 31.) For the reasons stated below, the motion is DENIED.

I.  BACKGROUND[3]

Foster is an inmate at NEOCC in Youngstown, Ohio. (Doc. No. 1 (Complaint), at 5.) Foster

---

[1] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] The Court notes that neither Foster's supplemental justice memorandum (Doc. No. 28) nor his supplemental reply (Doc. No. 33) were authorized by the federal, local, or any applicable rules of civil procedure. Nor did Foster seek leave from the Court to submit these supplemental filings. Nonetheless, recognizing Foster's *pro se* status, the Court will consider the arguments made in the supplemental filings. Foster is warned against any more filings outside of the applicable rules of civil procedure without first seeking leave from the Court.

[3] The factual background of this case is more fully set out in the Court's memorandum opinion and order dismissing Foster's complaint. (Doc. No. 25 (Opinion and Order), at 1–3.) Instead of repeating the factual background herein, the Court only provides a brief factual and procedural background.

has a disability and uses a wheelchair. (*See* Doc. No. 23-1 (Inmate Reasonable Accommodation Request), at 1; *see also* Doc. No. 1, at 7 (discussing Foster's mobility device).) Foster alleges that NEOCC denied him accommodations for his disability and retaliated against him for seeking such accommodations. (Doc. No. 1, at 7–10.) Foster further alleges the existence of a $5.4 billion contract, procured from the "Government using promissory fraud against, Plaintiff, the intended beneficiary of the contract." (*Id.* at 2.)

On February 14, 2025, Foster filed the complaint in this action, asserting a claim for breach of contract and claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). (Doc. Nos. 1, 13.) The complaint sought wide ranging relief, including $5.4 billion in damages for the alleged contract breach (Doc. No. 1, at 12–13), $2,222,222,222 in additional damages, and various forms of equitable relief. (*Id.* at 13–14.).

The Court dismissed the complaint on August 8, 2025. (Doc. No. 25.) First, the Court held that Foster could not maintain any claim against NEOCC because it is a non-jural entity. (*Id.* at 5–6.) The Court next held that, even if NEOCC were a jural entity, the complaint failed to set out a facially plausible claim. (*Id.* at 6–8.). Specifically, Foster's ADA claim failed because Title I of the ADA only applies in the employment context, and Titles II and III do not apply to private prisons. (*Id.* at 6–7.) Foster's RA claim similarly failed because Foster did not allege that NEOCC received any federal financial assistance as required by the RA. (*Id.* at 7.) Finally, Foster did not adequately allege that he was an intended third-party beneficiary to support his contract claim. (*Id.* at 7–8.)

Foster now moves under Rule 60 to reopen the case and vacate the Court's opinion and order based on "the Court's mistake of law[.]" (Doc. No. 27, at 2.)

## II. LEGAL STANDARD

Rule 60 provides various grounds for relief from a final judgment or order. Fed. R. Civ. P. 60. While the motion is unclear as to which portion of Rule 60 it invokes, the Court construes the motion as one under Rule 60(b)(1), due to Foster's claim that the Court made a "mistake of law." (Doc. No. 27, at 2.) Rule 60(b)(1) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). The Sixth Circuit "has stated that a Rule 60(b)(1) motion is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (citation omitted).

## III. DISCUSSION

As a preliminary matter, Foster does not assert any excusable mistake or unauthorized act of an attorney. Rather, Foster appears to base his motion on an alleged "mistake" by the Court. (Doc. No. 27, at 2.) Thus, the Court will only review the motion for potential mistakes of law or fact.

In his motion, Foster makes various arguments: (1) that the defendant in his complaint "has been the State of Ohio at all times" (*id.* at 2), (2) that CoreCivic, the private company operating NEOCC, is merely Ohio's "insurance provider" defending it in this suit (*id.* at 3–4), (3) that both the ADA and RA apply to the facts of this case (*id.* at 5), (4) that Foster is a third-party beneficiary of the alleged contract (*id.* at 6), and (5) that the Court should have sealed its opinion and order dismissing Foster's complaint. (Doc. No. 32, at 2.) Finally, Foster appears to request sanctions

3

under Rule 11 of the Federal Rules of Civil Procedure. (Doc. No. 27, at 6.) The Court addresses each argument in turn.

      *a. Ohio is Not a Defendant in This Case*

Foster contends that the Court misconstrued his complaint as being against NEOCC when it was in fact against Ohio. (Doc. No. 27, at 2.) Foster makes various arguments in support of this contention. (*Id.* at 2–3; Doc. No. 28, at 1.) But a simple review of the complaint and docket defeats Foster's argument. In his complaint and civil cover sheet, Foster lists only "North East Correctional" as the defendant. (Doc. No. 1, at 1; Doc. No. 1-4 (Civil Cover Sheet), at 1.) While the Court must liberally construe *pro se* pleadings, *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citations omitted), the Court cannot read into the complaint an entirely new defendant. *See id.* at 714 ("[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." (citation omitted)).

The Court further notes that at no point prior to filing the Rule 60 motion did Foster claim that Ohio was the defendant in this case. Indeed, in his response to NEOCC's motion to dismiss, instead of arguing that Ohio was the defendant, Foster argued that NEOCC "agreed to assume the State's duties[,]" implicitly recognizing that NEOCC was the defendant. (Doc. No. 22, at 2.) Foster cannot use Rule 60 to raise a new argument that he could have raised earlier. *See Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001) ("Rule 60(b), however, does not provide relief simply because litigants belatedly present new facts or arguments after the district court has made its final ruling." (citation omitted)).

The Court thus made no mistake in construing the complaint to be against NEOCC. Foster's failure to sue a jural entity forecloses his claims and his remaining arguments to reopen

4

this case. Nonetheless, the Court will address the remaining arguments.

### b. *CoreCivic's Relationship to Ohio Does Not Render Ohio a Defendant*

Foster next argues that CoreCivic is Ohio's "insurance provider" and that CoreCivic is "defending Ohio'[s] liability[.]" (Doc. No. 27, at 3–4.) Foster appears to argue that CoreCivic's and NEOCC's involvement in the case is that of an insurer/indemnifier for the real defendant—Ohio.

Foster cites Ohio Rev. Code § 9.06(D)(3) for the proposition that CoreCivic is Ohio's insurance provider. (*Id.* at 3.) Section 9.06(D)(3) requires that contractors approved to operate certain prison facilities "indemnify and hold harmless the state . . . [for] [a]ny constitutional, federal, state, or civil rights claim brought against the state related to the facility operated and managed by the contractor[.]" Ohio Rev. Code § 9.06(D)(3). But the possibility that CoreCivic may have a duty to indemnify Ohio in certain suits does not change the fact that Ohio is not a named defendant in this case. One cannot sue a party by naming only that party's indemnifier as a defendant. Again, the Court made no mistake in construing the complaint to be solely against NEOCC.

### c. *Foster Did Not Adequately Allege Violations of the ADA or RA*

Foster next argues that the Court was mistaken in dismissing his ADA and RA claims. In response to this Court's holding that Titles II and III of the ADA do not apply to private prisons (Doc. No. 25, at 6–7), Foster argues that "[t]he Sixth Circuit . . . does not regard any such thing as a private prison." (Doc. No. 27, at 3 (citing *Green v. Cook*, 83 F. App'x 99, 101 (6th Cir. 2003).) Foster misconstrues *Green*. *Green* simply states that certain conduct of private prison employees is attributable to the state for purposes of liability under 42 U.S.C. § 1983. *See Green*, 83 Fed.

5

App'x at 101. It does not say that the Sixth Circuit does not recognize the concept of private prisons, and it does not contradict the case law holding that Titles II and III of the ADA do not cover private prisons. (Doc. No. 25, at 6–7.)

Foster next argues that "the 'State is responsible under Title II.'" (Doc. No. 27, at 3 (quoting 75 Fed. Reg. 56221 (Sept. 15, 2010); citing 42 U.S.C. § 12205a).) Foster is correct that Title II of the ADA covers public entities, *Tennessee v. Lane*, 541 U.S. 509, 517, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), but Foster has not sued a public entity. He sued a private prison facility that—even if it were *sui juris*—is not a public entity under the ADA. (*See* Doc. No. 25, at 6.) Foster's argument thus fails.

Finally, Foster argues generally that the ADA and RA apply. (Doc. No. 27, at 5; Doc. No. 28, at 3.) In support of this argument, Foster says only "Plaintiff included all of these terms in his [] complaint and left no need for more question." (Doc. No. 27, at 5 (internal record citation omitted).) However, neither the complaint nor any of Foster's filings provide any reason to upset the Court's conclusions that (1) the ADA cannot apply where Foster sued a private prison facility (Doc. No. 25, at 6–7) and (2) the RA cannot apply where Foster failed to allege NEOCC received any federal financial assistance.[4] (*Id.* at 7.) Foster thus fails to establish any mistake in the Court's dismissal of his ADA and RA claims.

---

[4] In an apparent attempt to establish NEOCC's receipt of federal financial assistance, Foster submits an "AI [artificial intelligence] Overview" stating that CoreCivic received some funds under the Coronavirus Aid, Relief and Economic Security ("CARES") Act. (Doc. No. 27-1.) Assuming, without deciding, that CARES Act funds could constitute federal financial assistance under the RA, this Court holds Foster's post-judgment submission of the "AI Overview" insufficient to establish NEOCC's receipt of federal financial assistance or a mistake by the Court. *See Price v. Dep't of Corr.*, No. 22-cv-10219, 2025 WL 400046, at *2 (E.D. Mich. Feb. 5, 2025) (finding no error in magistrate's disregard of "AI Overview" on summary judgment).

### *d. Foster Did Not Adequately Allege That He Was a Third-Party Beneficiary*

Foster argues that the Court was mistaken in dismissing his breach of contract claim. Foster argues that Ohio entered an agreement for the receipt of federal funds in return for a promise to not discriminate, and as an intended beneficiary of that agreement, Foster is entitled to damages for breach of that promise. (Doc. No. 28, at 3–4; Doc. No. 33, at 2.) As this Court already stated, Foster's status as an inmate alone does not render him an intended third-party beneficiary to any contract. (Doc. No. 25, at 7–8.) And, as will be discussed below, none of Foster's cited case law changes this conclusion.

Foster first cites *Barnes v. Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002) and *Green*, 83 F. App'x at 101. Neither advances Foster's cause. First, the Supreme Court in *Barnes* simply noted that, when assessing liability and available damages in cases brought under statutes authorized by the Constitution's Spending Clause, the Court often uses the analogy of a breach-of-contract claim on a third-party beneficiary theory. *See Barnes*, 536 U.S. at 186–87. Second, in *Green*, the Sixth Circuit simply affirmed a district court's dismissal of a § 1983 claim alleging Eighth Amendment violations. *See Green*, 83 F. App'x at 100–01. Nothing in *Barnes* or *Green* helps Foster establish his status as a third-party beneficiary.

Nor does *Cullen v. Hyatte*, No. 3:23-cv-918, 2025 WL 816632 (N.D. Ind. Mar. 14, 2025) help Foster. In *Cullen*, the district court held that the plaintiff adequately pleaded a third-party beneficiary claim by pleading: (1) defendant's contract with the state obligated defendant to monitor inmate communications for potential safety risks, (2) that obligation was intended to benefit inmates in the state's custody, and (3) defendant breached that obligation. *Id.* at *5. *Cullen*, however, is distinguishable from the present case. Whereas the *Cullen* plaintiff pointed to specific

7

language in the applicable contracts showing an obligation to a third party, *see id.*, Foster fails to point to any specific language in any contract and provides only conclusory allegations of his third-party beneficiary status. Such pleading is insufficient. *See Adams v. CoreCivic of Tennessee, LLC*, No. 3:23-cv-823, 2024 WL 253616, at *6 (M.D. Tenn. Jan. 23, 2024) (dismissing third-party beneficiary contract claim where plaintiff provided "only conclusory assertions that the contracting parties are under a legal duty to all [] inmates").

Finally, Foster relies on the Ohio Supreme Court case of *DeCastro v. Wellston City Sch. Dist. Bd. of Educ.*, 761 N.E.2d 612, 617 (Ohio 2002). (Doc. No. 32, at 4; Doc. No. 33, at 3.) While *DeCastro* involved a third-party beneficiary contract claim, *id.* at 614, the Ohio Supreme Court addressed only a single narrow issue: "whether nominal damages can be recovered where actual monetary damages cannot be proven in a breach of contract claim." *Id.* at 615. It did not address the pleading standard for a third-party beneficiary contract claim. *DeCastro* thus does not help Foster.

The Court made no mistake of law or fact in dismissing Foster's breach of contract claim.

    e. *The Court's Prior Opinion Need Not be Sealed*

In his reply brief, Foster appears to argue that the Court's opinion and order (Doc. No. 25) should have been sealed. (Doc. No. 32, at 2.) The public has both "a constitutional and a common law presumptive right of access to civil proceedings and judicial records." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) (*citing Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983)). This presumption "is particularly strong when judicial opinions, rather than other court filings, are at issue." *Sec. & Exch. Comm'n v. Abdallah*, No. 1:14-cv-1155, 2015 WL 12766492, at *2 (N.D. Ohio May 19, 2015). "Only the

most compelling reasons can justify non-disclosure of judicial records." *Rose v. Bunts*, No. 4:14-cv-82, 2014 WL 2964938, at *5 (N.D. Ohio June 30, 2014) (quoting *In re Knoxville News–Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983)).

Foster provides no compelling reason for sealing any portion of the Court's opinion and order. Foster appears to argue that the Court's opinion and order should have been sealed because it cites some records that are potentially confidential. (*See* Doc. No. 32, at 2 (citing Ohio Admin. Code § 5120-9-31(H) ("[g]rievance records are considered confidential[.]")).) But the mere fact that a document references potentially confidential information does not, by itself, warrant sealing. *See e.g., Dahmer v. W. Kentucky Univ.*, No. 1:18-cv-124, 2020 WL 12813747, at *2 (W.D. Ky. Sept. 25, 2020) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 307 (6th Cir. 2016)). Beyond his claims of confidentiality, Foster only states that the opinion and order "exposes dangerous terms . . . of a very serious nature" without explaining what those terms are or what danger they pose. (Doc. No. 32, at 2.) These conclusory statements fall far short of the compelling reasons needed to seal a judicial record. *See Ellis v. Clinton Cnty. Bd. of Comm'rs*, No. 1:23-cv-341, 2024 WL 4453397, at *1 (S.D. Ohio Sept. 24, 2024) (denying motion to seal where movant "only provides conclusory reasons why these compelling reasons exist."). The Court thus made no mistake in failing to *sua sponte* seal its opinion and order.[5]

> ### f. Foster's Request for Rule 11 Sanctions is Procedurally Defective

Though unclear, Foster appears to move for sanctions against defense counsel under Rule 11 of the Federal Rules of Civil Procedure. (Doc. No. 27, at 6.) According to Foster, defense

---

[5] The Court also notes that the only factual material the Court cited in its opinion and order were documents publicly filed by Foster himself. Foster never sought to seal any of his filings. Foster does not explain how the Court's citation to documents that are already publicly filed can render its opinion and order sealable under applicable law.

9

counsel gave this Court an "erroneous view of the law." (*Id.* at 5 (citation omitted).) But "[a] motion for sanctions [under Rule 11] must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Foster has failed to file a separate motion for sanctions, and he has failed to describe the specific conduct that allegedly violates Rule 11(b). To the extent Foster seeks sanctions under Rule 11, such sanctions are denied.

### IV. CONCLUSION

Foster fails to identify any mistake of law or fact in this Court's opinion and order dismissing Foster's claims. Accordingly, Foster's motion to reopen under Rule 60 (Doc. No. 27) is DENIED.

**IT IS SO ORDERED**.

Dated: October 14, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**